Vanduzer v. Vanduzer.

AFFIRMED.

VANDUZER v. VANDUZER.

1. **Divorce:** CRUELTY: WHAT CONSTITUTES. To entitle the wife to a divorce on the ground of cruelty, the acts complained of must be of such a nature as to justify a belief that the continuance of cohabitation would be dangerous to her life and health; (see cases cited in opinion;) and upon a review of the facts of this case, which are interesting and peculiar, (see opinion,) *held* that they did not amount to such cruelty.

2. **Husband and Wife:** SEPARATION: SEPARATE SUPPORT. The law will in no case award separate support to the wife when she has voluntarily separated herself from her husband, and is not herself free from fault as to the cause of such separation.

3. **Divorce:** TEMPORARY ALIMONY: ADDITIONAL ALLOWANCE IN SUPREME COURT: COSTS. In an action for divorce and alimony, in which the prayer for a divorce was withdrawn and the case prosecuted as to alimony, the court below allowed plaintiff a sum for temporary alimony and for counsel fees. She asks in this court an allowance for her support pending the appeal, but, as it is here determined that her separation from her husband was not justifiable, no such allowance can

be made; but an allowance is made to pay for the preparation of an amended abstract of the record, which was necessary for a fair presentation of her case here, and the costs of printing it are taxed to defendant.

*Appeal from Adair Circuit Court.*

THURSDAY, MARCH 3.

THE parties are husband and wife. Plaintiff brought an action for divorce and alimony, alleging in her petition that defendant had been guilty of cruel and inhuman conduct, endangering her life. In an amended and substituted petition, subsequently filed, she withdrew her prayer for a divorce from defendant, and asked only for alimony. On a hearing the circuit court awarded her judgment for $4,200, payable in three installments. Defendant appeals.

*Wolf & Landt* and *Charles S. Fogg,* for appellant.

*E. Willard,* for appellee.

REED, J.—The parties were married in March, 1855. At that time they lived in Scott county, and they continued to live there until 1876, when they removed to Adair county. When they were married, they were possessed of but little of this world's goods; but they were industrious, economical and prudent in the management of their affairs, and at the time of their separation, which occurred in December, 1883, they were in good circumstances. They owned a well-improved farm of 150 acres, and had about them the amount of stock and other property usually kept on farms of that size, and defendant had some money and evidences of indebtedness to the amount of $2,500 or $3,000. Substantially, all of this property was accumulated by their joint efforts after their marriage. Plaintiff not only did the work in and about their house, but she often assisted defendant in his work on the farm. She frequently drove the reaper when they were harvesting their small grain, and she generally

assisted in gathering the corn in the fall. It appears, however, that she did this voluntarily, and not at the direction or command of her husband. They had six children, some of whom are married and settled in life, while others were living with them at the time of the separation.

Plaintiff's complaint is that, during the time she lived with defendant, he, on several occasions, committed acts of 1. DIVORCE: violence against her; that he is a man of vio-cruelty: what constitutes. lent and ungovernable temper and strong animal passion, and that he compelled her to submit to excessive sexual intercourse with him; that he is of a jealous and unreasonable disposition; and that without cause he became suspicious of her, and accused her of being unchaste, and of having committed adultery, and that he made these charges in the presence of her children, and published them among their neighbors and relatives. And she alleges that her health and peace of mind were destroyed by his abuse, and false and groundless charges and slanderous publications concerning her, and that she was thereby compelled, for her own safety and peace, to abandon him and their home, and seek support and protection elsewhere. In her petition she enumerates five occasions in which she alleges he was guilty of personal violence toward her. There is great conflict in the evidence as to whether any violence at all was committed on some occasions referred to by her; and, as to those transactions in which defendant admits that he used some degree of force toward her, there is great conflict as to the extent of the violence used, and the injuries inflicted. But, accepting as true all that plaintiff testified to with reference to the several transactions, we think that, standing alone, they do not entitle her to a judgment either for a divorce or separate maintenance. To entitle the wife to a divorce on the ground of cruelty, the acts complained of must be of such a nature as to justify a belief that the continuance of the cohabitation would be dangerous to her life or health. *Cole v. Cole,*

23 Iowa, 433; *Knight v. Knight*, 29 Id., 599; *Beebe v. Beebe*, 10 Id., 133.

According to plaintiff's own story, the acts of violence of which she complains were not of a serious character. Nor did she receive any injuries that were at all dangerous to either life or health. She made no complaint to her relatives of the injuries she claimed to have received until after the separation, although, with a single exception, they occurred years before that; and other matters of difference between her and her husband were in the mean time the subject of frequent discussion between her and them. Nor were they the occasion of the separation. It may be conceded that the evidence with reference to those transactions shows that defendant was arbitrary and dictatorial, and that he is not possessed of the highest sense of what is due from a husband to his wife. , But his conduct, although reprehensible, was not characterized by that degree of cruelty and inhumanity which in the eyes of the law will justify either a divorce or a separation. We think, also, that the allegation that he compelled plaintiff to submit to excessive sexual indulgence, to the injury of her health, was not proven.

One remarkable feature of the case, however, remains to be considered. Before she made the acquaintance of defendant, plaintiff was engaged to be married to a man by the name J. V. D. Lewis, who is a relative of hers. Her father at one time gave his consent to this engagement, but subsequently became dissatisfied with something which he claimed Lewis had done. He forbade him to come about his house, and, in consequence of this, the engagement between him and plaintiff was broken off. Lewis afterwards married another woman, and moved away from Scott county, and he and plaintiff did not meet again until about two years before her removal to Adair county. At that time Lewis lived in Audubon county. Plaintiff and defendant being on a visit to a brother of hers who lived in Guthrie county, they went, accompanied by her brother, on a visit to Lewis. They repeated the

visit during the following year, and, after their removal to
Adair county, they visited him frequently, and he and his
wife visited them at their home, and Lewis, being a carpen-
ter, was employed by defendant to work on some of the
buildings which he erected on his farm.    Some time after
their removal to Adair county, a question arose between plaint-
iff and defendant as to the effect of the former marriage engage-
ment between her and Lewis.    The question of controversy
between them appears to have been whether, in consequence
of that engagement, to which her father had consented, she
was not, under the law of God, really the wife of Lewis, and
whether they were not living together in an unlawful and
adulterous relation; and this question, unreasonable and fool-
ish as it seems, was for years the subject of heated and fre-
quent discussions between them.    Some of their relatives
who lived near them also became involved in the controversy.
A brother of plaintiff appears to have been particularly offi-
cious in the matter.    He testified that he sought, on frequent
occasions, to convince her that there was no ground for the
claim that she was the wife of Lewis, and that her relations
with defendant were lawful.    There are grounds for believ-
ing, however, that his efforts had the effect to widen, rather than
heal, the breach between the parties.    As time went on, the
discussions became more frequent and acrimonious, and they
finally led to the separation of the parties.

Strange as it is that a question of this character should
have arisen after the parties had lived together in the marital
relation for more than twenty years, and raised a family of
children, it is still more remarkable that there should be any
question as to which of them it was that questioned the law-
fulness of the relation in which they were living.    But so it
is.    Each of them testified that it was the other that raised
the question, and that the bickerings and troubles which it
caused arose from the frequency and persistency with which
it was urged.    While it may be difficult to determine which
of them is responsible for starting the question originally,

we are satisfied that they both are to blame, to some extent, for the discussions, and quarrels in which they subsequently engaged with reference to it. We believe that the fact, however, is this: When plaintiff renewed her acquaintance with Lewis, she came to entertain a decided friendship for him. She preferred his company to that of other acquaintances, and she sought his society. We need not inquire as to the cause of this preference. It is clear that it existed, but there is not the slightest evidence of criminality in their relations. Nor is it proven that their conduct towards each other was even lacking in propriety. Their friendship was noticed by the brother mentioned above, and he assumed to remonstrate with her concerning her conduct. She regarded this as an officious intermeddling by him in a matter that did not concern him, and was greatly aggravated and annoyed by it. He afterwards spoke to defendant about it, and thus it became a matter of discussion between him and plaintiff. She was vexed and angered at the mention of the subject, and in some of the discussions which followed, in justification of her partiality for Lewis, she made the claim that their engagement created a relation as sacred and lasting as though their marriage had been consummated. It is true that she denied ever having made such a claim. But we are convinced by the evidence that she did make it, and we are also satisfied that the contentions and quarrels which followed were in consequence of it. It will be conceded that the subsequent conduct of the defendant with reference to the matter was unreasonable and foolish in the extreme. He persisted in discussing the matter with her with the view, as he claims, of convincing her of the fallacy of her position. But her claim, however foolish it appeared to be, was causing no harm. She admitted the obligation of her relation to him, and did not propose to renounce any of the duties of that relation. He insisted that her position involved the further one that their relation was unlawful and adulterous, which was more than she ever claimed for it, and on one

occasion he proposed to her to take the question before the authorities of the church of which they were members for their determination. He also informed her father and other relatives and friends of what she was claiming. His discussions of the subject with her tended only to provoke her, and cause her the more strenuously to maintain her position. As this was apparent, he should have desisted. But plaintiff was not herself free from fault. The whole trouble arose from her act in taking and adhering to a position which should never have been taken or adhered to. She was generally a voluntary party to the discussions which followed, and she was often petulant and unreasonable.

We need not inquire whether she was required to make a case that would have entitled her to a divorce before being 2. HUSBAND and wife: separation: separate support. entitled to judgment for her separate support. The law will in no case award such support to the wife when she has voluntarily separated herself from her husband, and is not herself free from fault as to the cause of the separation; and that is the position in which we find the present case. We do not believe that there was any reasonable ground for the separation originally; nor does it appear to us that there is any ground for its continuance. If the parties will but forget the unhappy and foolish difference that led to the separation, and repose in each other something of the trust and confidence which for more than twenty years existed between them, and take counsel of their own hearts and consciences, instead of with those who have sowed their pathway of life thick with seeds of dissension and discord, there exists no reason why they may not spend their declining years in peace and happiness in each other's society.

As we reach the conclusion that the plaintiff is not entitled to recover at all, we do not consider the question whether an award in gross can be made for the separate support of the wife, which was the form of the judgment below.

Vanduzer v. Vanduzer.

Plaintiff filed in this court a motion for an allowance of temporary alimony. She was awarded an allowance by the circuit court for support during the pendency of the action; also for counsel fees. The allowance for support terminated upon rendition of the final judgment, and she asks for an allowance for that purpose during the pendency of the appeal. As we have determined that the separation was not justifiable on her part, we think no additional allowance can be awarded for that purpose. That part of the motion is therefore overruled. Her counsel prepared an additional abstract in the case, which we think was necessary for the fair presentation of the case in this court. We will award her seventy-five dollars as compensation for counsel for preparing that abstract. We will also tax the cost of printing it to defendant.

3. DIVORCE: temporary alimony: additional allowance in supreme court: costs.

REVERSED.