CATHERINE A. PRATHER v. J. C. PRATHER, Appellant.

**Divorce:** CRUEL TREATMENT: *Buggery.* In an action for divorce, brought by the wife, on the ground of cruel and inhuman treatment, which would endanger life, wherein the defendant filed a cross-bill, basing his prayer for divorce on the same ground, it appeared that the husband and the wife had both been guilty of violent using and abusive language to each other, and had, on certain occasions, resorted to blows; but it appeared further, that the plaintiff's conduct was, in a measure, induced by the fact that she had seen defendant have carnal knowledge of a cow. *Held*, that the evidence was sufficient to justify a decree for plaintiff.

PLEA AND PROOF: *Appeal.* Though a petition for divorce does not charge defendant with buggery, defendant cannot, on appeal, first object that evidence of it was allowed, when defendant first called out said evidence on cross-examination, permitted further examination without objection, and set up the giving of the testimony on part of plaintiff as constituting inhuman treatment, by an amendment to his cross-petition.

*Appeal from Harrison District Court.*—HON. FRANK R. GAYNOR, Judge.

TUESDAY, OCTOBER 20, 1996.

Action for divorce and alimony, and for the custody of the four minor children of the parties. The cause for divorce alleged is inhuman treatment, such as to endanger the life of the plaintiff. The defendant answered denying the charge of inhuman treatment, and, by way of cross-bill, charges the plaintiff with inhumanly treating him, so as to endanger his life, wherefore, he asks for a divorce. Plaintiff, in reply, denies the allegations in defendant's cross-bill. Decree was entered in favor of the plaintiff. Defendant appeals.—*Affirmed.*

*L. R. Bolter & Sons* and *Frank Tamisiea* for appellant.

*S. H. Cochran* for appellee.

Given, J.—I. The treatment alleged by plaintiff as inhuman is that, about July, 1893, defendant became abusive, disagreeable, and fault-finding, falsely accusing her with not being virtuous and true, and with being unduly intimate with other men; that about the twentieth of December, 1893, and in January, 1894, defendant, without cause or provocation, assaulted, beat, struck and kicked her, causing her great, injury, pain and suffering. The treatment alleged by defendant as inhuman is that, about July, 1893, the plaintiff began to display a contentious, quarrelsome disposition, frequently saying that she did not propose to live longer with defendant, telling him to leave their home, and using vile and opprobrious epithets to him, in the presence of their children; that about the first of January, 1894, she brought to the house two young unmarried men, strangers to defendant, and that she and the fourteen-year old daughter of defendant sat up with said men nearly all night; that between July, 1893, and January,

1894, plaintiff attended dances and associated with one Burk, contrary to defendant's wishes; that plaintiff would frequently leave their three young children with defendant, and attend dances, against his wishes, with other men, and stay out with them until late hours in the night; that about the first of February, 1894, the plaintiff ordered him to leave their home, called him vile names, and struck him with a stove poker; that on the first day of February, 1894, without cause or provocation, she assaulted him with her fists, and called him vile names. Plaintiff alleges that no serious difficulty had arisen between her and her husband up to July, 1893; and she testifies that their first trouble was July 14, 1893. The defendant testifies that the trouble began in June or July, 1893. The evidence shows that from July, 1893, to February, 1894, defendant continued to live at home, sleeping part of the time in the barn; that the parties did not cohabit, and during that time frequently indulged in disgraceful quarrels, and profane, vulgar, and abusive language. There can be no doubt under the evidence, that the conduct of each towards the other was substantially as charged.

Conduct, to constitute a cause for divorce, must not only be inhuman, but such as to endanger life. *Freerking v. Freerking*, 19 Iowa, 34. The cruel treatment must not be such as is caused by the party's own misconduct. *Knight v. Knight*, 31 Iowa, 451. To know which of these parties is in fault for breaking up the harmonious relations that existed between them from their marriage, in November, 1876, we must inquire for the cause. The plaintiff, in her evidence, gives as the cause, that on the twelfth day of July, 1893, she saw the defendant in the act of carnal intercourse with a cow, and that she thereafter refused to cohabit with him. This the defendant denies, and he contends that the cause of their estrangement

was the conduct of the plaintiff in going, contrary to his wishes, to dances, associating with other men, and in permitting their fourteen-year old daughter to keep company with men. If the statement of the plaintiff is true, it certainly accounts fully for the state of affairs that is shown to have arisen between these parties, and for the intense dislike which the plaintiff evidently has for the defendant. Plaintiff testifies that she saw the defendant commit the same unnatural act on November 8, 1889; that she spoke to him about it; that he never said a word; that she never spoke to him about it again, for the sake of her children; and that she had just been confined by the birth of their last child. She admits that thereafter she continued to live and cohabit with the defendant until July 12, 1893. She says that on the morning of the fourteenth, and ever since, she has refused to cohabit with him. Maggie Daugherty, a sister of the plaintiff, who lived for some time in the family of these parties, testifies that she saw the defendant commit the same act in his barn in January, 1892, and that she saw the stain on his clothes, and that plaintiff saw the stain when they were washing together. Tracy Daugherty, another sister of the plaintiff, testifies that she saw cow dirt on defendant's shirt, near the bottom, and that plaintiff saw it. Mary Prather, daughter of these parties, testifies that she saw cow manure on his shirt once. None of these girls state the time when they saw the soil on defendant's shirt. Surely, the testimony of these three girls tends quite strongly to corroborate the testimony of the plaintiff. Another fact shown by the evidence, that tends to corroborate the plaintiff, is the base character of the defendant. It is alleged, and proven, that it was his habit to relate the most base, vulgar, and immoral and disgusting stories in the presence of his wife, children, and these young girls. To

this charge, the defendant's only answer is this: "So far as the dirty stories are concerned, there has been times when all the grown members of my family indulged in them some." Slow as we should be to believe the charge that plaintiff makes, it is much easier to believe it of one so base as to relate the unnamable stories which the evidence shows this defendant did relate, in the presence of his wife, children, and these young girls. Hard as it is to believe this charge, we are not warranted in saying, in the face of such corroboration, that it is false. The estrangement between these parties arose at once, as it well might, from such an act, and not as it would from the alleged misconduct of the plaintiff. There was much in the plaintiff's conduct to be condemned, but, if what she has sworn to is true, she has the excuse of a great provocation. "The acts complained of must be of such a nature as to justify the belief that the continuance of cohabitation would be dangerous to her life and health." *Vanduzer v. Vanduzer*, 70 Iowa, 614 (31 N. W. Rep. 956). Plaintiff is evidently not as sensitive to such a wrong as many others would be, as is shown by the fact that she continued to cohabit with the defendant after the first discovery; but to continue cohabitation under existing circumstances, could not but impair her health and imperil her life.

It is urged on behalf of the defendant that there is no charge in the petition of this unnatural conduct against the defendant. That is true, and it is also true that plaintiff's evidence on that subject was first called out by defendant on cross-examination; that the further examination was permitted without objection; and that, at the close of the evidence, the defendant amended his cross-petition, setting up said statements of the plaintiff in her evidence as inhuman treatment. Surely, under these circumstances, this feature of the case may not be ignored.

II.   Each party charges that the other is unsuitable to have the children, and each asks to be awarded the care and custody of them.   The record discloses that neither is very suitable; but the court must choose between them, and our conclusion is that they were properly awarded to the plaintiff.

Defendant complains of the decree as to alimony allowed to the plaintiff.   In view of the limited amount of property owned by the parties, it is surely liberal; but not more so than it should be in view of the facts, and that plaintiff is to have the care of the children.   Our conclusion is that the decree of the district court should be AFFIRMED.