MATHEW PRINE, APPELLANT, VS. LUCY PRINE, APPELLEE.

1. Our statute in reference to the allowance of alimony to a wife in cases where she is a party defendant refer exclusively to cases of divorce. Where the suit is brought by the putative husband to obtain a decree declaring the marriage void *ab initio*, a court of chancery has power to grant alimony to the putative wife, independent of the statute, and as incident of the jurisdiction of the court in such cases.

2. In a suit brought by a husband against a putative wife to annul the marriage relation, and the fact of marriage is *prima facie* established, and the husband has means wherewith to live and to litigate, and the wife is destitute, the husband must furnish the wife the means of subsistance while the suit is pending and to enable her to maintain her defense. The allowance in such a case upon a proper showing of temporary alimony, counsel fees and suit money to the wife while the suit is pending in the appellate court is not an exercise of original jurisdiction, but is essential to the proper and impartial administration of justice in the exercise of appellate jurisdiction.

3. In order for an appellate court to make an allowance of alimony, counsel fees and suit money while the case is pending in such court, it should have some other proof than that taken in the court of original jurisdiction when a similar application was made to and granted by such court. Such relief in an appellate court is not a matter of course, and can only be granted upon proof made in such appellate court showing the continuance of the necessities of the wife, and also the ability of the husband. (Liddon, J., agreeing to this head-note so far as it relates to counsel fees and suit money, but not as to alimony).

4. This court will not reverse the decree of the Circuit Court as being against the evidence where the evidence is conflicting upon the subject of the mental capacity of one who enters into a marriage contract, where there is sufficient evidence, if believed, to show that the party was not deprived of the use of his reasoning faculties at such time, and where the uncontradicted evidence shows that the party has repeatedly since the marriage ratified the same by cohabitation with the other party thereto.

5. If a party at the time of entering into a marriage contract is so much intoxicated as to be *non compos mentis*, and does not know what he is doing, and is for the time deprived of reason the marriage is invalid; but is not invalid if the intoxication is of a less degree than that stated.

6. A marriage invalid at the time for want of mental capacity of one of the parties thereto may be ratified and made valid afterwards by any acts or conduct which amount to a recognition of the same.

Appeal from the Circuit Court for Duval county.

The facts in the case are stated in the opinion of the court.

*Henderson & Raney*, for Appellant.

*M. C. Jordan*, for Appellee.

LIDDON, J.:

The appellant filed his bill in chancery against the appellee in the Circuit Court to set aside a marriage between them. The grounds upon which the said marriage was sought to be nullified were, that on the 14th day of February, A. D. 1893, the day when the marriage ceremony was performed, and for some days previous thereto, the complainant was and had been in a state of intoxication from the use of ardent spirits; that he was deprived of his reason, and in such mental condition that he did not know what he was about, and was to all intents and purposes *non compos mentis*, and that the defendant took advantage of his condition and proceeded to have the marriage ceremony performed; that complainant repudiated the transaction as soon as he became sober enough to realize what had happened, and has ever since refused in any manner, shape or form to recognize it, and has never since lived or in any manner cohabited with the defend-

ant, and would never cohabit with her because she had for years previous to said marriage been a person of notorious bad character and reputation. The prayer of the bill was, that such marriage be declared null and void *ab initio*.

The answer of the defendant admitted the marriage, and emphatically and specifically denied all the allegations of the bill as to the intoxication of complainant and his mental condition at the time of the marriage ceremony, and that defendant took any fraudulent or unfair advantage of him, or that he was in any such condition that defendant could have taken any such advantage of him in having the marriage ceremony performed. The answer alleges that at the time of the marriage ceremony the complainant was perfectly sober and *compos mentis;* that she did not procure the performance of said marriage ceremony, but remained passive while the complainant procured the same. The answer alleges that the complainant knew before and at the time of the marriage that the defendant had not been of chaste character, and sets out in considerable detail the circumstances of the courtship and marriage of the parties. The answer also emphatically denied that the complainant had refused to recognize the marriage, or had repudiated the same; but, on the contrary, expressly alleged that the defendant had in many ways ratified such marriage and consummated the same by cohabitation. The details of acts constituting such ratification and cohabitation were fully set out in the answer. Among other things upon these points it is alleged that after the marriage the complainant took the wedding party to a dwelling house owned by him, and asked defendant how she would like it for a home, and after her inspection of the house and expressing satisfaction, gave her the

keys, and instructed her to move her household goods at once to the same, which should be their future home, and during the same day in company with defendant and the wedding party of four persons all told went to his bank where he drew $25 and gave to the defend- ant to defray the expenses of such removal; that the wedding party rode around in a carriage and enjoyed themselves until it was too late to remove to the house agreed upon on the day of the marriage, but complain- ant and defendant agreed that such removal should take place the next day. The answer alleges that the complainant cohabited with and spent the night suc- ceeding the day of the marriage and the next after- noon with the defendant, and that on the night of the 16th of February, two days after the marriage, the parties cohabited and spent the night, or the greater part of the same, together at the house of one Carrie Williams. The answer also alleges that the defendant when she married "then and there resolved and deter- mined to make the complainant a good and faithful wife, and turning her back to the past, to live a better life," and that she is in destitute circumstances, poor and without the means of subsistence, unable to ob- tain any employment or earn anything by her own la- bor, as all lawful avenues for a livelihood are barred against her, and that it seems to be the purpose of complainant to drive her into the paths of evil and vice by starvation, neglect and cruelty; that complainant was possessed of considerable property, both real and personal, from which he derives an income of about $500 per month; that defendant has no means of em- ploying counsel or defraying the expenses of main- taining her defense; that she relies upon the court to award her temporary alimony and suit money, includ-

ing counsel fees, to enable her to meet the complainant upon equal ground.

To this answer complainant filed a general replication. Further proceedings were had in which the case was referred to a master to take testimony and report as to the amount proper to be allowed the defendant as temporary alimony and counsel fees. The report was filed and exceptions thereto overruled, the master's recommendations adopted, and defendant allowed $15 per week alimony *pendente lite*, and $100 counsel fees. No argument is made upon this matter, and greater detail of statement of it need not be given. Voluminous evidence upon this subject, of reasonableness of attorney's fees, and the issues in the case, appear in the record. The final decree of the court dismissed complainant's bill at his costs, and directed that the complainant pay the defendant $300 for the services of her solicitor in defending said cause in her behalf. From this decree complainant appealed.

After the case was brought here upon appeal the appellee filed her petition and motion thereon for an order requiring appellant to pay her the sum of $15 per week as temporary alimony, as was decreed in the lower court to be reasonable, and such other sum as the court should deem reasonable, and also to pay her costs of said motion and other costs and solicitors fees. The petition for reasons why the relief prayed for should be granted, in substance, alleged that appellee was without means of support; that she had no property or resources by which she could maintain herself or employ counsel during the pendency of the cause in this court; that in the Circuit Court an order was made, after testimony taken on both sides by a special master, allowing her $15 per week for alimony, and counsel fees; that by reason of the appeal to this

court only a portion of said alimony and counsel fees had been paid; that the appellee, as will appear by the testimony taken in the cause, and in the record in this court, is a man possessed of large means and resources, and is amply able to support her, and to pay a reasonable solicitor's fee to enable her to maintain her defense in this case. The appellant filed an answer resisting the petition upon the ground alleged, that the appellee has ever since the rendition of the final decree by the Circuit Court on the 23d of February, 1893, and still continues to lead, a lewd life, and has supported and still continues to support herself through and by means of such lewdness. The answer also alleged that the allowance by the Circuit Court of alimony and counsel fees was excessive and should not be taken as a basis for allowances pending the appeal. To this answer the appellee filed a replication emphatically denying all the material allegations of the answer as to her lewdness. This replication also alleged the great want and destitution of appellee, and contained recriminatory allegations to the effect that the complainant had, ever since his appeal was taken to this court, vigorously endeavored to prevent the appellee from living an honest and virtuous life, and constantly pursued her with designs of driving her into a life of prostitution. The details of such general allegations are set out in the replication, but are unnecessary to be stated here. At the time of filing the replication, appellee also filed an affidavit alleging her destitution, and denying that she leads, or has led a lewd life as alleged in the answer.

The petition for alimony being preliminary and ancillary to the main suit, is pressed by appellee so that it in natural order would come on for disposition before the main suit is reached upon the docket. As it

seemed to us necessary, in order to properly dispose of this branch of the case, to examine the whole record, we have determined to dispose of the whole case in one opinion—the appeal as well as the petition for alimony and counsel fees. We are of opinion that the decree of the court below should be affirmed, but a majority of the court think that alimony *pendente lite* should not be granted in this court. Lest there be some misapprehension of our position in the matter, we will state as briefly as the novelty and importance of the questions will admit those conclusions upon which the court is united as well as those upon which it is divided. We are agreed upon all propositions announced except when otherwise expressly stated. We will first touch upon the power of the court to grant alimony in a nullity suit. Neither party to the record disputes such power. Yet, as the allowing of alimony in such cases can not be justified under our statutes which, in proceedings where the wife is a defendant, refers exclusively to cases of divorce, and as the question has never before arisen in this State, we think it best to refer to the principles of law controlling such cases, and cite some authorities in support of the same. In a number of cases it has been held that independent of statutory authority, the courts have power to grant alimony and suit money in such cases brought by the putative husband. Where the form of relief prayed for in such cases is for a divorce on the ground of the nullity of the marriage, it has been held that statutory provisions in reference to alimony similar to ours applied only to divorces for causes arising after the marriage, but that in actions for divorce on the ground of nullity, the power exists independent of statute as an incident to the jurisdiction of the court in such cases. O'Dea vs. O'Dea, 31 Hun.

441; Griffin vs. Griffin, 47 N. Y. 134; Brinkley vs.
Brinkley, 50 N. Y. 184, S. C. 10 South. Rep. 460. The
case of Griffin vs. Griffin, *supra*, in the relief sought,
was very much like the present.   The court said:   "It
is conceded that there is no statute in terms authoriz-
ing the order, and that, if sustained, it must rest upon
the incidental powers formerly vested in a court of
chancery, in cases of this description, and to which
the Supreme Court has succeeded.   *   *   *   Yet it
has been the constant practice of the court of chan-
cery, both before and since the Revised Statutes, to
make equitable provision for all these matters; and in
so doing, it has been guided by the decisions of the
ecclesiastical courts of England in similar cases."
(Citing a number of English authorities).   "This has
not been done upon the theory that the court of chan-
cery in this State was vested with the jurisdiction of
the ecclesiastical courts of England in matrimonial
cases, or that it ever possessed jurisdiction in cases of
divorce other than that conferred by our own statutes;
but upon the ground of the general equitable jurisdic-
tion of the court, and also that when our statute did
confer jurisdiction upon the court of chancery in those
actions for divorce which by the English law are solely
cognizable in the ecclesiastical courts, the grant of the
jurisdiction carried with it by implication the inciden-
tal powers which were indispensable to its proper ex-
ercise, and not in conflict with our own statutory
regulations upon the same subject."   To same effect
is Lee vs. Lee, 66 How. Pr. 207.   2 Bishop on Mar.,
Div. & Sep., sec. 725; Note to Methvin vs. Methvin,
60 Am. Dec. 675, citing various authorities.

The appellant has not disputed our power to grant
the alimony and suit money, pending proceedings
here, yet, as this question is a new and novel one, this

being the first application of the kind ever addressed to this court, and as there is conflict in the authorities, we have thought it best to give some expression of opinion and reference of the state of the law upon the subject. This court, under our Constitution, has only appellate jurisdiction in cases in equity originating in the Circuit Court. The question which caused us some difficulty was whether the allowance of alimony in this court would not be an exercise of original, instead of appellate, jurisdiction, and beyond our constitutional powers. In examining the question we ascertain that a number of appellate courts have granted alimony and suit money, while the case was pending in such courts on appeal. In many of these the question of the power to make the order was not discussed. The court assumed the power as a matter of course and it seems no objection was made thereto. In other cases the relief has been refused upon the merits, the court assuming that it had jurisdiction and power to grant the relief if a proper case had been presented, and in some cases the power is expressly asserted. Vanduzer vs. Vanduzer, 70 Iowa, 614, 31 N. W. Rep. 956; Krause vs. Krause, 23 Wis. 354; Wagner vs. Wagner, 36 Minn. 239, 30 N. W. Rep. 766; Chaffee vs. Chaffee, 14 Mich. 463; VanVoorhis vs. VanVoorhis, 90 Mich. 276, 51 N. W. Rep. 281; Day vs. Day, 84 Iowa, 221, 50 N. W. Rep. 979; Browne on Divorce and Alimony, p. 248; Zeigenfuss vs. Zeigenfuss, 21 Mich. 414; Lake vs. Lake, 16 Nev. 363; Weishaupt vs. Weishaupt, 27 Wis. 621; Disborough vs. Disborough, 51 N. J. Eq. 306, 28 Atl. Rep. 3.

The question of the jurisdiction of an appellate court to grant the relief was expressly raised and decided in Goldsmith vs. Goldsmith, 6 Mich. 285. The husband in that case objected to the allowance being made by

the appellate court upon the ground that the jurisdiction of such court only authorized it to review and pass upon the decree and proceedings appealed from. The court overruled the objection and held that it had power to award the alimony pending appellate proceedings. The fullest discussion of the subject we have seen is in Lake vs. Lake, 17 Nev. 230. In that State the constitutional grant of jurisdiction to the Supreme Court in so far as it affects the point under consideration, is identical in terms with the section of our Constitution regulating the jurisdiction of this court. An application for suit money was made in the Supreme Court, and resisted on the ground that it would be an exercise of original jurisdiction. The court held otherwise and made an allowance for counsel fees and costs, and fortified its position by elaborate argument and citation of authorities. In that case the wife was defeated in the court below, and was the appellant. The gist of the conclusion of the court is stated as follows: "The law gives appellant in this case the right to appeal from that part of the judgment disposing of the property, and accords to her every privilege granted to other litigants in this court. Upon her rests the burden of showing error in the court below. Among all the rights to which she is entitled, there is no one more important to her and the court than that of having the aid of counsel learned in the law and acquainted with her case. Without such aid the court must perform the double and inconsistent functions of court and counsel, or she, with no knowledge of the principles, or experience in the practice of the law, must cope with counsel of ability in a profession which, most of all, requires a familiarity with all knowledge, and most of all offers success to him who knows how to put in practical use the knowledge he possesses.

Without counsel the statute of the State and the rules of the court can not be complied with. Without them the good order and well being of the court would be disturbed, and it would be deprived of one of the usual, proper and necessary means of exercising its appellate jurisdiction."

In the case before us the merits of the application are much greater. Here the wife has won in the court of original jurisdiction, and *prima facie* the merits of the controversy are with her. To grant her alimony and suit money would certainly be in accordance with the principle universally prevalent, that where the fact of marriage is *prima facie* established, and a suit, especially a suit by the husband, is brought to annul the marriage or the marriage relation, and the husband has means wherewith to live and to litigate, and the wife is destitute, the husband must furnish the wife the means of subsistence while the suit is pending, and to enable her to maintain her defense. We do not believe it would be under such circumstances an exercise of original jurisdiction for us upon a proper showing to grant the wife the means of subsistence, while her case is pending in this court, but that such an allowance is essential to the proper and impartial administration of justice in the exercise of our appellate jurisdiction. If she had not the means to live and to employ counsel to present her case to the court, so that it may be fully advised as to the merits of her side of the controversy, how can it be said that there is a fair, even handed, impartial administration of justice between her and the appellant, who has abundance of means of support, and to employ able and ingenious counsel to present his case in its most favorable aspects.

We have been able to find only two cases in which appellate courts have refused such applications for re-

lief, without reference to the merits of the case. In one of these cases, Hunter vs. Hunter, 100 Ill. 477, no reason was given for refusing to entertain the application, except that it had not been the practice of that court, "at least for many years," to entertain such applications, and that such applications were left to the court from which the appeal was taken. The case, however, of Reilly, vs. Reilly, 60 Cal. 624, emphatically determined that the appellate court had no jurisdiction to make an order for alimony pending appeal; that the jurisdiction invoked by the application was original instead of appellate. This case also decided that the jurisdiction to grant such alimony, even pending appeal, was vested in the court from which the appeal was taken. As to the jurisdiction being vested in the court from which the appeal was taken, the contrary doctrine is established in this State in the case of State *ex rel.* Shrader vs. Phillips, 32 Fla. 403, 13 South. Rep. 920, where this court held that pending an appeal, with supersedeas, the Circuit Court was without power or jurisdiction to entertain proceedings for alimony and suit money. The reasons given for the action taken in Hunter vs. Hunter, *supra*, and Reilly vs. Reilly, *supra*, have no application to this State, and we do not regard them as of great weight or value in determining the matter. Therefore if this court has not the power to entertain proceedings under such circumstances no such power is vested in any court, and a great and humane principle of the law would, so far as it relates to cases pending on appeal, be practically abolished in this State.

Recurring, then, to the merits of the application for alimony, the majority of the court are of the opinion that no alimony and counsel fees and suit money can be allowed on this application, other than court costs,

for the reason that the appellee has not furnished us with proof of her own necessities for support, as well as the means and ability of the appellant to contribute to such support during the pendency of the case here, the period for which alimony is asked. Neither has she offered any proof as to the value of services of her solicitor in the necessary proceedings here, or as to what would be reasonable suit money in this court. They are of opinion that we can not take judicial notice of the value of the services of her solicitor, nor of the amount necessary for suit money, and that in order to make an allowance for alimony here we should have other proof than that taken in the Circuit Court when a similar application was made to that court and granted; that such relief is not a matter of course, but can only be granted upon proof made here showing the continuance of the necessities of the wife and also the ability of the husband.

The member who prepares this opinion agrees with the other members in declining to allow counsel fees and suit money, but thinks the temporary alimony should have been allowed. The reasons impelling him to this view are that the necessary amount of such alimony was ascertained by a master and approval by the Circuit Court after the taking of testimony. The petition sets this matter up. The appellant does not allege that there has been any change whatever in the circumstances of either party since the Circuit Court made the order allowing $15 per week temporary alimony. The allowance by the Circuit Court is alleged to be excessive, but no reasons are given upon which the allegation is predicated. He thinks that there is sufficient in the petition, answer and record to show what would be a proper amount for such temporary

alimony, and that an allowance of same should be made.

In this case an issue was made upon the answer of appellant to the petition for alimony. No testimony has been taken or any affidavits or proof whatever offered by either party except an affidavit of appellee referred to. No question as to the proper practice as to taking of testimony in such cases has been presented to us, and we, therefore, do not attempt to decide what practice should be pursued in obtaining and offering evidence in such cases in an appellate court.

We come now the consideration of the merits of the appeal. Several assignments of error are filed, but the only one argued is, that the court erred in rendering the final decree in the case. We will not attempt to set out the testimony taken in the case. To do so would require much space, time and labor, and not greatly subserve any very useful purpose. Upon the subject of the intoxication of the complainant at the time of the marriage ceremony, the evidence was extremely conflicting. There was certainly testimony which, if believed, proved that the complainant was so much under the influence of intoxicants as to be wholly incapable of entering into any contract. This evidence, however, was contradicted by other evidence which, if true, showed, if the complainant was intoxicated at all, it was to a very slight extent and not sufficient to deprive him of the use of his reasoning faculties. Upon this point we can not say that the decree of the court was against the weight of evidence. Repeated acts of cohabitation when the complainant was sober, subsequent to and ratifying the marriage, were proven upon the part of the appellant, and he made no effort whatever to contradict the same. The

amount of solicitor's fees allowed by the decree was less than was shown to be reasonable and proper by the undisputed testimony of members of the bar. The decree was in all respects in accordance with the evidence in the case. As to the law applicable to the facts, it can not be doubted that if the party at the time of entering into the contract was so much intoxicated as to be *non compus mentis*, and does not know what he is doing, and is for the time deprived of reason, the marriage is invalid; but it is not invalid if the intoxication is of a less degree than that stated. 1 Bishop on Marriage, Div. & Sep., sec. 607, *et seq.;* Brown on Divorce and Alimony, p. 197. On the other hand, it is equally well established that a marriage invalid at the time for want of mental capacity, may be ratified and made valid afterwards by any acts or conduct which amount to a recognition of its validity. A lunatic on regaining his reason may affirm a marriage celebrated while he was insane, and this without any new solemnization. Cole vs. Cole, 5 Sneed, 57, S. C. 70 Am. Dec. 275; Sabalot vs. Populus, 31 La. Ann. 854; 1 Bishop on Mar., Div. & Sep., secs. 614, 624; Brown on Divorce and Alimony, pp. 206, 207.

The appellant, in view of what he calls his unfortunate situation, asks us to take the most favorable view which the law as applied to all the testimony shown by the record will permit to be given his case. This we have been inclined to do, but have not been able to reach a different conclusion from that announced by us, without doing violence to the law and the testimony. The situation of the appellant is indeed a peculiar one. He is married to a woman whom the evidence clearly shows before her marriage was a public prostitute. The appellant was fully acquainted with her and her character and reputation. The large

allowance against him for alimony and suit money, and the costs decreed against him, makes him pay dearly for his folly. By his rash and reckless conduct he has placed himself in a position from which we, upon this record, have no power to extricate him. The appellant is ordered to pay both the costs of the application for alimony and the costs of appeal.

The petition for alimony, counsel fees and suit money, except as to court costs, is denied.

The decrees of the Circuit Court dismissing the bill of complainant and awarding counsel fees against appellant are affirmed.