JOSE GARCIA and IDA GARCIA v. THE EXCHANGE NATIONAL BANK OF TAMPA.

167 So. 518.
Opinion Filed April 18, 1936.

*Caraballo, Graham & Caraballo,* for Appellants;
*Knight, Thompson & Turner,* for Appellee.

WHITFIELD, C. J.—In August, 1934, the bank brought suit to foreclose a mortgage upon real estate executed to the bank in November, 1932, by Jose Garcia, single, to secure notes executed by Jose Garcia. The mortgage covered all the rents and income from the mortgaged premises. The acknowledgment of the execution of the mortgage by Jose Garcia stated that he was single. The answer of the defendant was not sworn to and contains the following:

"Now comes Jose Garcia, who has been sued as a single man, but averring that he is and has been married from a time prior to the execution of the mortgage herein foreclosed, by his attorneys, Caraballo, Graham and Cesio, and for answer to the bill of complaint says:

1.

"This defendant admits the allegations of paragraph one.

2.

"This defendant admits the allegations of paragraph two. (The allegations referred to relate to the execution of the notes and the mortgage by Jose Garcia.)

3.

"This defendant admits all the part of paragraph three which quotes from said mortgage or from said note, but this defendant avers that a greater amount of interest has been paid than is admitted by said paragraph. That it was agreed in and by said mortgage that all rents from the properties covered thereby were to be applied to the payment of interest and then to the next principal note due.

That complainant, in pursuance of said covenant, has collected all rents from said premises and has not accounted to this defendant for said collections except in a general way by the allegations of the bill of complaint.

"This defendant says that by reason of said provision and the fact that the complainant did proceed to collect the rents from said premises that said mortgage was not in default at the time of institution of this suit, and consequently the right to consider the whole of the principal note as due did not accrue to the complainant.

4.

"This defendant adopts the statements in the foregoing paragraph of this answer wherever applicable and says that by reason thereof this defendant has not become obligated to pay any attorney's fee to the solicitors for the complainant.

5.

"This defendant admits the allegations of the fifth paragraph of the complainant's bill except as to the amount on hand in the possession of the complainant as to which the defendant prays that the complainant may be required to account for the monies received and the times at which they were collected and alleges that by reason of said collections and of the mortgage covenants the complainant was required to apply the sums collected to the payment of interest and principal on said mortgage. That had these payments been so applied said mortgage would not have been in default at the time of institution of this suit.

"And having fully answered said bill, this defendant prays:

"1. That an accounting may be had and taken of the monies collected by the complainant from rents of the prop-

erties covered by said mortgage and that upon said accounting being taken that this court may direct the proper application of said payments so that it may be determined by this court whether or not said mortgage was in default at the time of the institution of this suit.

"2. That if it be ascertained that said mortgage was not in default at the time of institution of this suit, that complainant's bill be dismissed."

Upon application and stipulation it was ordered that Ida Garcia be permitted to intervene in the cause. By answer not under oath the intervenor, Ida Garcia, averred:

"That she is the common law wife of Jose Garcia, and that she has been such common law wife of the said Jose Garcia since October, A. D. 1919. That in said month of October, A. D. 1919, the exact date not being now recalled by your Intervenor, she and the said Jose Garcia, being both of legal age and free to contract matrimony, agreed to, and did, take each other as husband and wife, and agreed to, and did thereafter to the present day live and cohabit together as man and wife. That your Intervenor did not execute the notes and mortgage now sued on, and avers that she did not know that her husband, the said Jose Garcia, had entered into the alleged obligation to the Complainant until a time approximately that of the institution of this suit. That she did not consent to the execution of said notes and mortgage, and that she has in no way barred her rights of dower in said premises.

"The premises considered, your Intervenor prays that if this Court shall determine that an indebtedness exists from your Intervenor's husband to The Exchange National Bank of Tampa, and a decree of sale is made whereby said premises are ordered sold to satisfy said indebtedness, that this Court may by its decree protect the inchoate rights of

dower of your Intervenor by providing that the sale of said premises shall be made subject to the rights of dower of your Intervenor."

Testimony was taken and reported by a special master.

In the final decree in favor of the plaintiff the court adjudged:

"That the equities are with the plaintiff herein, The Exchange National Bank of Tampa, and against the defendant, Jose Garcia, and the intervening petitioner, Ida Garcia, and each of them; that the said Ida Garcia, intervening petitioner, has no dower rights in and to the mortgaged property herein involved."

Ida Garcia and Jose Garcia appealed and contend here that the decree adjudging that at the time of the execution of the mortgage, Ida Garcia had no dower rights in the property as the common law wife of Jose Garcia, is contrary to the manifest weight and legal effect of the evidence.

To conserve the welfare of human society and good order, the policy of the law is to require common law marriages to be proved with clearness and exactness when asserted, to the end that injustice may be avoided and family and property rights protected.

Contrary to his admission that he executed the mortgage which stated that he was single, the defendant, Jose Garcia, averred in his *unsworn* answer "that he is and has been married from a time prior to the execution of the mortgage," and he did not testify to support the *unsworn* averment of his answer.

In her answer the intervenor, Ida Garcia, avers that in the month of October, 1919, "she and the said Jose Garcia, being both of legal age and free to contract matrimony, agreed to and did take each other as husband and wife,

and agreed to and did thereafter to the present day live and cohabit together as man and wife." It is not entirely clear that the quoted averment is legally sufficient to show "an agreement to become husband and wife immediately from the time when the mutual consent is given." Marsicano v. Marsicano, 79 Fla. 278, 84 So. 156.

"To constitute a common law marriage at least two essentials must appear; mutual consent and capacity of the parties; and the agreement itself must be to become husband and wife immediately from the time when the mutual consent is given; which is known as words of present assent, *per verba de presenti.*" Chaves v. Chaves, 79 Fla. 602, 84 So. 672.

In the testimony of Ida Garcia the following appears:

"Q. Are you married? A. Yes. Q. What is your husband's name? A. Jose Garcia. * * * Q. When were you married to Jose Garcia? A. In October, 1919. Q. Have you lived with Jose Garcia since that time to the present day as his wife? A. Yes. * * * Q. Is Mr. Garcia still living with you? A. He is. Q. As I understand, this relation between you and Mr. Garcia has continued from 1919 until the present time? A. It has. Q. Just tell the Master, Mrs. Garcia, how did it come about that you and Mr. Garcia went to living together, whether you knew him before, or what happened? A. I have known Mr. Garcia for five or six months before, and it was our agreement between ourselves that we marry ourselves; we thought we were of age, and we didn't have any preacher or justice of the peace, and we married; it was out business that we marry ourselves; we thought we would be capable of handling our own affairs and that was our business ourselves.

"Q. At that time was Mr. Garcia more than twenty-one years of age? A. He was about thirty-eight years of age,

I believe, at that time. Q. Were you more than twenty-one years of age? A. Yes. Q. Were you married then? A. No, I was not. Q. Was Mr. Garcia married then? A. No. Q. Both of you single? A. Yes, single. Q. As far as you know, there were no mental difficulties with Mr. Jose Garcia? A. I don't think he was crazy. That was our belief, that was our religion, that was our belief between one another, that we didn't need a preacher.

"Q. It has lasted pretty good, hasn't it? A. Lasted all these years. Q. Can you tell us about when that occurred, this agreement that you had with your present husband that you would marry each other, as near as you can tell us? A. It was—we had talked the matter over before; we just decided to marry each other; we had spoke about it, and we didn't think it was necessary to call a preacher; we just made the agreement and rented a home and furnished it and lived in it together, along the second of October, something like that, in 1919. Q. Mrs. Garcia, had you and Jose Garcia lived together until you made that agreement? A. We had not, no sir. Q. But you then immediately moved and lived together? A. Yes. Q. From that time on? A. Yes."

Jose Garcia did not testify as to his marriage.

Adduced in evidence were documents executed since 1919 by Ida Garcia in her maiden name and also other documents executed by her as the wife of Jose Garcia; and there was testimony that Jose Garcia introduced Ida Garcia as his wife as well as testimony that Ida was not introduced by Jose Garcia as his wife. Other pertinent evidence was adduced.

As against the finding and decree of the chancellor, it cannot be said with confidence upon a consideration of the entire record, that the decree is contrary to the manifest

weight and legal effect of the evidence. See Catlett v. Chestnut, 117 Fla. 538, 158 So. 91.

Affirmed.

ELLIS, P. J., and TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.