**UNITED STATES v. LAYTON et al.**
Civil Action No. 1369–M.

District Court, S. D. Florida,
Miami Division.

Sept. 26, 1946.

E. L. Duhaime, Asst. U. S. Atty., of Miami, Fla., and H. S. Phillips, U. S. Atty., of Tampa, Fla., for the United States.

Manley Caldwell and Madison F. Pacetti, both of West Palm Beach, Fla., for Margaret M. Layton.

Joseph A. Wanick, of Miami Beach, Fla., for Clara Frances McDonald.

L. H. Hedrick, of Hall & Hedrick, all of Miami, Fla., for Patricia Joan Layton.

DE VANE, District Judge.

This action, in the nature of a bill of interpleader, was brought by the United States of America pursuant to section 617, National Service Life Insurance Act 1940, 38 U.S.C.A. § 817, Sections 19 and 500, World War Veterans' Act, 1924, as amended, 38 U.S.C.A. §§ 445, 551, and Rule 22 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The defendants named in the action each claim an interest in certain certificates of National Service Life Insurance issued by the plaintiff to one Jerry Clattfelter Layton, deceased. The Court is requested to determine the rights of the defendants in these certificates.

In the first of these certificates, numbered N–8411888, effective January 7, 1943, in the sum of $5,000, the insured originally designated as beneficiaries, Clara Frances McDonald, described as aunt, to the extent of $2,500, and Patricia Joan Layton, described as daughter, to the extent of $2,500. In the second certificate, numbered N–1272-9083, effective July 1, 1943, in the sum of $5,000, the insured originally designated Patricia Joan Layton, described as daughter, as principal beneficiary and Clara Frances McDonald, described as aunt, contingent beneficiary. By written instruments, executed respectively on September 21, 1943, and April 24, 1944, the insured cancelled all previous designations of beneficiaries for the said insurance, and directed that all of said $10,000 of insurance should be paid, upon his death, to the defendant, Margaret M. Layton, described as wife, as principal beneficiary, or to the defendant, Clara Frances McDonald, described as aunt, in loco parentis, as contingent beneficiary. The insured died August 11, 1944, in the military service in Europe, while the insurance was in full force and effect. The defendants claim in the following capacities: Margaret M. Layton, as the designated beneficiary and widow of the deceased; Clara Frances McDonald, as designated contingent beneficiary and foster mother of the insured, alleging that defendant, Margaret M. Layton, is not the lawful widow of the insured; and Patricia Joan Layton as the minor child of the insured.

The essential facts in the case are not in dispute. They show that Jerry Clattfelter Layton, deceased, was born in 1915 and when about thirteen years of age was given by his mother, for the purpose of adoption, to the defendant Clara Frances McDonald and her husband. Clara Frances McDonald was the sister of the insured's father, who was deceased at the time insured was given to her by his mother. The insured was reared as though he was a son of Clara Frances McDonald, but was never legally adopted by her. He continued to live with her until his marriage in 1935 to Aletha Haynes. In 1936 Patricia Joan Layton was born of this union. In 1941 the insured was divorced from his first wife and she was given the custody of their daughter, Patricia Joan Layton. She has since remarried.

The insured entered the military service of the United States in March 1942, and while stationed in Florida became acquainted with Mrs. Margaret M. Kohl about September, 1942. Mrs. Kohl was at the time separated from her husband, but was not legally divorced from him until June 17, 1943. She testified that before the divorce was granted the insured made a proposal of marriage to her, but their marriage was delayed by the fact that her final decree of divorce was not granted until after the insured had been transferred to duty over-seas. She testified further that after her divorce was granted the insured again proposed marriage to her, by mail, which she accepted, by letter, and they

agreed to be married by proxy marriage, if such marriage could be entered into under the laws of Florida. She further testified that Judge Robbins, County Judge of Palm Beach County, Florida, was consulted about the matter and after some days' deliberation concluded that a proxy marriage would be valid. An application for marriage license was forwarded by her to the insured in Scotland, where he was then stationed, which he signed and attested his signature before an Officer, and returned to her. She then signed and properly attested said application for marriage license and filed same with the County Judge of Palm Beach County, Florida. A license was duly issued on said application and Judge Robbins later married her to the insured, with one Harvey acting as proxy. No formal power of attorney was executed by the insured for Harvey to act as proxy, but letters authorizing Harvey to so act and confirming his action were admitted in evidence. The marriage was solemnized on August 7, 1943.

In September, 1943, the insured made an allotment to defendant, Margaret M. Layton, authorized by the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C.A. Appendix, § 301 et seq., designating her as his wife, which she continued to receive to the date of his death. In September, 1943, he designated her, as wife, principal beneficiary under one of the insurance certificates, and in April, 1944, he designated her, in the same capacity, principal beneficiary under the other insurance certificate. Defendant Clara Frances McDonald was made contingent beneficiary under each certificate. The insured died August 11, 1944, while in the service of his country, without having seen his wife after the proxy marriage.

While several legal questions as to the rights of the respective parties have been raised by the pleadings, and argued by counsel, the first question to be disposed of is whether Margaret M. Layton was the lawful wife of the insured at the time of his death. If she was, then it becomes unnecessary to decide any of the other legal questions raised in this case.

Whether Margaret M. Layton was the legal wife of the insured at the time of his death is controlled entirely by the laws of Florida. The precise question presented by this case has not been passed upon by the Supreme Court of the State, but under the authority of the Supreme Court of the United States in Meredith v. City of Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9, it becomes the duty of this court to decide the question and it proceeds to do so.

Much of the argument in the briefs filed in this case is devoted to a discussion of the question whether a proxy marriage in the State of Florida is valid, and if such a marriage is valid whether the requirements of a valid proxy marriage were complied with in this case. Florida has no statute authorizing a proxy marriage and no mention of proxy marriages is found in the decisions of the Florida courts.

The common law is in force in Florida, except where it has been modified by competent governmental authority, and the Supreme Court of Florida, in a long line of decisions, has held that common law marriages are valid. A few of these decisions are cited below: Daniel v. Sams, 17 Fla. 487; Caras v. Hendrix, 62 Fla. 446, 57 So. 345; Marsicano v. Marsicano, 79 Fla. 278, 84 So. 156; Chaves v. Chaves, 79 Fla. 602, 84 So. 672; Garcia v. Exchange National Bank of Tampa, 123 Fla. 726, 167 So. 518; Orr v. State, 129 Fla. 398, 176 So. 510.

The weight of authority among textbook writers is to the effect that where the common law is in effect in a State and where common law marriages are recognized as valid that proxy marriages are also valid. See 32 Harvard Law Review, 473; 8 University of Kansas City Law Review, 48 (abstracted in Current Legal Thought, Vol. XI, No. 4). The Attorney General of the State, however, while holding valid a trans-Pacific radio-telephone marriage, has held that proxy marriages, by mail, are not valid marriages in Florida. Biennial Report of the Attorney General, 1943–1944, page 489.

Since the Florida statutes and decisions of the Supreme Court contain no reference to proxy marriages, the court will first consider whether the marriage brought in ques-

tion by this case is a valid common law marriage under the decisions of the Supreme Court of Florida.

The Florida cases cited above all hold as valid marriage contracts between competent parties consummated under the rules of the common law. These cases hold there are two essentials to a valid common law marriage, viz., (1) capacity of the parties; and (2) mutual consent. In all the cases before the Supreme Court of Florida, involving the validity of a common law marriage, the facts disclosed that the parties assumed the marital status merely upon a verbal agreement between the parties to become man and wife. Such a marriage, as the State court points out in its numerous opinions, is a marriage "per verba de praesenti" without other evidence of the marriage agreement. Such a marriage agreement is usually supported by evidence of "cohabitation and repute," but the State court has held that it is not essential that there be cohabitation to render a common law marriage valid. See Green v. Green, 77 Fla. 101, 80 So. 739; Chaves v. Chaves, supra.

In no case has the Supreme Court of Florida specifically held that to constitute a valid common law marriage the consent and agreement to become man and wife must be made by the parties to the agreement in the presence of each other. While the court makes frequent use of the Latin phrase "per verba de praesenti" in its opinions, it is apparent from a reading of the cases that it is of no more significance to the validity of a common law marriage than "cohabitation and repute," which phrase is also frequently used in the opinion of the court. It is clear to this Court that the sole function of proof that the consent or agreement was made "per verba de praesenti" is to distinguish such cases from cases where there is cohabitation without an agreement to become husband and wife.

The Attorney General of Florida, in his opinion heretofore referred to, read into the opinions of the Supreme Court, as a third essential to the validity of a common law marriage in Florida, the condition that the agreement to become man and wife must be made "at the same time in the presence of each other, to be husband and wife from that moment." As I am unable to read into the Florida decisions this requirement as a third essential to the validity of a common law marriage in Florida, I find myself unable to follow the opinion of the Attorney General. This Court knows no valid legal reason that should require that the agreement to become man and wife must be made by the parties in the presence of each other. In this case the proof of the agreement to become man and wife is much more satisfactory than that made in most of the cases decided by the Supreme Court of Florida.

The validity of a common law marriage in Florida was first upheld by the Supreme Court of Florida almost eighty years ago and has been consistently upheld in every other opinion of that court on the subject since the first case raising the question was before the court. As the late Senator Andrews pointed out in Chaves v. Chaves, supra [79 Fla. 602, 84 So. 676], more than twenty-five years ago:

"If this form of marriage is regarded as undesirable, the remedy lies in the entire abrogation of the common law on that subject, a course that, in the present age, has much to commend it. The legislative branch of our state government has not thus far seen fit to change the law * * * and until such time (as it does) the common law will necessarily prevail."

Much is said in the briefs of counsel for the aunt and daughter as to the sufficiency of the proof of the consent of the deceased insured to the proxy marriage. In Prine v. Prine, 36 Fla. 676, 18 So. 781, 34 L.R.A. 87, the Florida Supreme Court held a marriage consummated in accordance with the statutes of Florida, but entered into under circumstances that rendered the marriage voidable, was ratified by the conduct of the husband after he had sobered up sufficiently to realize what he had done during his drunken stupor. While this Court is of the opinion that the evidence in this case undisputably establishes consent and agreement on the part of both parties to this marriage to become man and wife, there is, in law, no reason why the principle announced in Prine v. Prine, supra, should not be as applicable to

a common law marriage as to a marriage consummated pursuant to the statute of Florida. As heretofore pointed out, the evidence in this case shows that the deceased insured made an allotment to the defendant, Margaret M. Layton, as his wife, the month following the proxy marriage and that in September, 1943 and April, 1944 he named her, as his wife, principal beneficiary under the two insurance certificates involved in this case.

These acts of the deceased insured constitute ratification as well as proof of the agreement of the deceased insured with Margaret M. Layton to become husband and wife.

There is no question in the case as to the capacity of either of the parties to enter into the marital status. There is ample proof of the agreement between them to do so. The Court, therefore, holds that the marriage agreement entered into between Jerry Clattfelter Layton and Margaret M. Kohl, constituted a valid common law marriage in Florida, and that Margaret M. Layton, the lawful widow of the insured, is entitled to the money due by the United States of America upon the two certificates of insurance issued by the plaintiff to Jerry Clattfelter Layton, now deceased.