### CREWS v. NORRIS.

### No. 2008.

Circuit Court, Nassau County.

October 9, 1958.

Joseph C. Black, Jacksonville, for plaintiff.

Albin C. Thompson, Jr., Fernandina Beach, for defendant.

WILLIAM H. MANESS, Circuit Judge.

This action is instituted by Elvis S. Crews, as legal guardian of Paul Eustis Crews, an incompetent person, who was so adjudicated in the county judge's court of Duval County, Florida, on April 29, 1949, by reason of schizophrenia and a finding that such is chronic, " . . . the particular hallucinations being confused, hyperactive, restraint necessary . . .". The relief sought was the annulment of "a civil ceremony purporting to be a marriage . . . ", which was entered into by Paul Eustis Crews and one Lilly Norris, also known as Lilly Norris S. Crews, defendant herein, on January 7, 1956. A certified copy of the "Order Adjudging Incompetency" entered April 29, 1949, was attached to the complaint and relied on solely to establish the incompetency of Paul Eustis Crews to contract a valid marriage. The complaint further alleged that subsequent to the purported marriage the parties lived and cohabited together, as a result of which on November 26, 1956, a child was born, to-wit: Gary Paul Crews; that the parties separated on or about August 23, 1957, and have not since lived or cohabited together. The complaint further alleged that defendant mother is physically and mentally incompetent, and because of the incompetency of the father, the court should make the child (who is apparently normal in every respect) a ward of the court and enter such order as will suit the best interest of the child.

Testimony taken before the court established the allegations of the complaint outlined above, except as to the alleged physical and mental incapacity of the defendant mother to properly care for the said child, and, in this respect, the evidence relied on by plaintiff to establish by a preponderance of the evidence that defendant mother is physically and mentally incapable of properly caring for said child is insufficient. On the contrary, defendant has cared for said

child since birth and it is now nearly two years old and apparently well cared for. (This finding of fact is supported by the report of the State Welfare Board's investigation made at the request of the court because of the personal appearance of defendant and an obvious physical handicap.)

It does not appear from the testimony how long after the adjudication of incompetency of Paul Eustis Crews, on April 29, 1949, he was actually confined to an institution for treatment but he was at liberty for at least several months before the purported marriage ceremony on January 7, 1956, and has not since been restrained or confined and has, through his guardian, purchased real estate in Nassau County on which he constructed a modest home where he and defendant lived before and after the child was born and where defendant and the child still live and where, according to the unsworn statement of Paul to the court, the three would still be living if Lilly's treatment of him was what it should have been and if she had kept the house and baby as he thinks she should.

There is no doubt that unless the original adjudication of incompetency is conclusive on the issue of Paul's capacity to contract a valid marriage, the complaint fails to state a cause of action upon which relief can be granted, and there is no testimony which can form the basis of an amendment which will sustain the complaint. Counsel for plaintiff strongly contends that the adjudication is conclusive, but a study of the authorities on the subject of mental capacity or incapacity to enter into a marriage leads to the conclusion that the test is not the fact of legal adjudication without subsequent restoration, but is whether or not the person entering the marriage relation has sufficient capacity to understand the nature of the contract and the duties and responsibilities which it creates and the probable consequences. (See 35 Am. Jur. 191; Marriage, Section 18, *Tests as to Existence of Capacity.*)

Though no Florida decisions directly in point with the factual situation now before the court have been called to the court's attention, strong support for the foregoing rule is found in Corbin v. State, 129 Fla. 421, 176 So. 435, where our Supreme Court reversed a conviction of Henry Corbin, who had, prior to the alleged commission of the alleged offense, been adjudicated insane and not judicially restored. In that case, the Court said—"* * * The presumption raised by the adjudication is not conclusive, but may be overcome by proof that the accused was of sufficiently sound mind and conscience at the time of the commission of the crime to realize the character and consequences of his act." Therefore, in order to entitle Paul Eustis Crews to an annulment of the purported mar-

riage with defendant on the grounds of want of capacity on his part to contract a valid marriage, it is not sufficient to allege and prove his adjudication of incompetency and the absence of any judicial restoration, but he must allege and prove that at the time of the purported marriage ceremony he did not have sufficient mental capacity to understand the nature of the contract, the duties and responsibilities which it creates and its probable consequences. Evidence of his adjudication and absence of judicial restoration will raise a presumption of want of such mental capacity, but it is not conclusive on that issue. Also, it seems that one may have mental capacity to contract marriage without having capacity to contract generally or without having testamentary capacity. The reason for this rule, it has been observed, is that marriage depends to a great extent on sentiment, attachment and affection, which persons with weaker, as well as those with stronger, intellects feel, and that it does not depend, to the extent that ordinary contracts do, on the exercise of clear reason, discernment and sound judgment. See 35 Am. Jur. 190.

A second essential allegation which must be alleged and proved in this case in order to entitle plaintiff to the relief sought on the grounds of want of legal capacity is not only that such capacity did not exist at the time of the purported marriage ceremony, but also that at no time thereafter did Paul Eustis Crews have sufficient capacity to understand the nature of the marriage contract, the duties and responsibilities which it creates, and the probable consequences, because under the law of Florida, while the marriage of a person of unsound mind so as to lack the necessary mental capacity is void, it may, nevertheless, be ratified or affirmed on regaining the required mental capacity by any act or conduct which amounts to a recognition of it. In support of this view, our Supreme Court said in Prine v. Prine, 36 Fla. 676, 18 So. 781, 34 LRA 87—

"As to the law applicable to the facts, it cannot be doubted that if the party, at the time of entering into the contract is so much intoxicated as to be non compos mentis, and does not know what he is doing, and is for the time deprived of reason, the marriage is invalid; but it is not invalid if the intoxication is of a less degree than that stated. * * * On the other hand, it is equally well established that a marriage, invalid at the time for want of mental capacity, may be ratified and made valid afterwards by any acts or conduct which amount to a recognition of its validity. A lunatic, on regaining his reason, may affirm a marriage celebrated while he was insane, and this without any new solemnization. * * *"

In the case at bar, there is strong, and perhaps ample, evidence that even if Paul Eustis Crews did not have sufficient mental capacity at the time of the ceremony to contract a valid marriage, the subsequent living and cohabitation with the defendant (with the knowledge and acquiescence of his guardian, the county judge and the guardian's attorney) over a period of nineteen months and his present attitude that, except for the shortcomings of defendant, the parties would still be living together with their son, would at least make out a prima facie case of ratification and affirmance of his marriage, which, in the absence of other competent evidence showing incapacity, would be conclusive.

In view of the foregoing opinion, and the fact that no attack was made on the sufficiency of the complaint, and that the cause was tried on the theory that the adjudication of 1949 was conclusive on the issue of mental capacity, the court finds that the interest of justice requires that plaintiff be given an opportunity to amend his complaint, after which defendant should be permitted to replead and both parties be permitted to present further testimony as they may be advised, and the court being otherwise advised in the premises, it is ordered, adjudged and decreed as follows—

That the complaint is dismissed, and plaintiff shall have 20 days within which to file an amended complaint; provided, however, that in the event no amended complaint is filed within 20 days, the complaint shall stand dismissed, with prejudice.

That defendant shall have 20 days from service of any amended complaint within which to plead as she may be advised.

That until plaintiff elects to file an amended complaint, or until the expiration of 20 days if no amended complaint is filed, this court retains jurisdiction of this cause and the parties hereto to make further orders touching the care, custody, control and support of Gary Paul Crews, the minor child of the parties, and the temporary care, custody and control of said minor is hereby given to defendant, with right reserved to Paul Eustis Crews to see and visit said child at the home of said child only when Elvis S. Crews, his guardian, is physically present.

That plaintiff, by his guardian, Elvis S. Crews, shall pay to Albin C. Thompson, Jr., an attorney's fee of $75 for his services to defendant herein, which said fee shall be a temporary fee if plaintiff amends his complaint and, if not, shall be deemed a permanent total fee in this cause.